Milligan, J.,
delivered the opinion of the Court.
This was an issue of devisavit vel non, tried in the Circuit Court of Tipton County, upon a writing purporting to be the last Will and testament of Mary Sharp, deceased.
At the date of the execution of the Will, the testator was a feme covert. Her husband, James R. Sharp, is the sole devisee, and executor named in the Will. The Will purports to convey all her “land and personal property,” without. description or further designation. The land mentioned in the Will, appears to have been derived by deed from Joseph Johnson; and the personal property, we infer, claimed by the testatrix, arose from the sale of certain property mentioned in the residuary clause of Joseph Johnson’s Will, which was directed to be converted into money, and the proceeds divided between the testatrix and others. There is nothing in the record, that even tends to show there was any separate estate, created by the deed, or under the Will of Joseph Johnson, in the testatrix, either in the land or personal property, upon which the marital rights of the husband would not attach; much less, a power to convey, either by Will or otherwise, reserved to the wife. *47 In fact, the personal estate, so far as we can ascertain from this record, which, in many respects, is very defective, appears to have been money, or at most, choses in action; but if the latter, it does not appear whether they were, or not, reduced to the possession of the husband before the execution of the Will.
The question, therefore, upon which this case must turn, is, whether or not a married woman can, by Will, dispose of her real estate, when there is no technical seperate estate, securing-to her use the lands devised, or, special power to that effect, contained in the deed or other instrument under which she claimed title ?
By the Roman Civil Law, it seems to be conceded, that a married woman, possessed the same testamentary capacity, in all respects, as a feme sole: Redfield on Wills, 22, sec. 2; 1 Williams on Executors, 47; 2 Bl. Com., 497.
But, by the laws of England, no such power has been conceded to that class of persons. But there are many exceptions to this general rule, both in England and America, which, in this case, it would be needless to attempt to trace.
The uniform rule of law in this State, so far as we are advised, has been to deny to femes covert all testamentary capacity, except in. certain specified cases.
Prior to the adoption of the Code, it was held, in the case of Perry et al. vs. Gill, 2 Hum., 218, a married woman could make a Will under the following circumstances:
“1st. She can make a Will of property which is hers, not yet reduced into the husband’s possession, but this *48 with the assent of the husband, not in general, hut to the particular Will; and in such case the assent avails nothing, unless he survive, — it being hut his waiver of his right of being her administrator.
“2d, Independently of the assent of her husband, a wife has the power of disposition by Will, of her separate property.
“3d, When, by agreement, before marriage, or subsequently, upon a valid consideration, a power of appointment by Will is given to the wife, she may, with the assent of the husband, make a Will; but, even in such a case as that, it is ruled by Lord Hardwick, in the case of Henly vs. Phillips, that though a feme covert has a power of disposing of a sum of money, or any other thing, by writing purporting to be a Will, yet after the wife’s death, the proving it in the spiritual court, will not give it the authority of a Will, but it will still be considered as an instrument only, or an appointment of such a sum, or other thing in pursuance of the power; and before it is proved in the Commons, as a testamentary conveyance, the husband ought to be examined then as to his consent; nor till then, will it have the effect and operation of a Will: 2 Akins, 48.”
Our Statute, Code, sec. 2168, very much in conformity to the above recited decision, provides, that: “A married woman may dispose of any estate secured to her separate use, or in the execution of a special power to that effect, by Will in writing, subscribed by herself, or by some other person in her presence, and by her direction, and the subscription shall be made, or the Will acknowledged by her in the presence of at least, two *49 ■witnesses, subscribing tbe Will with their names in the presence of the testatrix.”
Under this section of the Code, it seems necessary, in order to enable a married woman to make a valid Will, that she must either have an estate secured to her separate use, or she must be thereunto authorized by special power. In the former case, the existence of a separate estate is enough, without the addition of any power of disposition by Will, or otherwise. So in the latter, vice versa, the presence of the special power of appointment, without a separate estate in the wife, is equally potential to authorize her to make a valid Will under such power: Clancy on Husband and Wife, 308, 309.
But, if she make a Will by virtue of a power, the power to make the Will, it is ruled in the case of Mullins and wife vs. Lyles, 1 Swan, 337, must be established before the Will can be submitted to a jury in an issue of devisavit vel non. In that case, the Court, however, say: “If the power to make the Will is after-wards proved, it cures the error, and then it becomes a mere matter of form, not going to the merits, and for which this Court would not reverse.”
Applying these rules of law to the case under consideration, it is clear it does not fall within them. The record totally fails to show that there was any separate estate secured to the use of the testatrix, in the lands assumed to be conveyed, by the Will; nor does there appear to be any power in the instruments under which she claims, authorizing her to dispose of the estate by Will or otherwise.
*50 The Act of 1849-50, ch. 36, which is substantially carried into the Code, at section 2481, has no application to this case; nor does it, in any sense, enlarge the testamentary capacity of femes covert. Its operation and effect is to protect the husband’s interest in the lands of his wife, from seizure and sale by his creditors during her life; and likewise to disable the husband from selling or disposing of such interest, by his own act, during his wife’s life, without her joining in the conveyance: 2 Head, 259; 4 Sneed, 683.
It creates no such separate estate in the wife, as will enable her, during her coverture, to dispose of it by Will; and no aid, in this case, can be derived from it.
We need only remark, as to the personal property mentioned, in general terms, in the Will, it is impossible for us to ascertain from the record, whether it had, at the date of the Will, been reduced to the husband’s possession or not. If it had not, it was competent for the wife, by the consent of her husband, to dispose of it by Will; but that consent, upon which the validity of the Will depends, being but a waiver of the husband’s right of becoming his wife’s administrator, we apprehend, could not be given within the meaning of the law, when it appears on the face of his wife’s Will, that he is the executor and sole devisee.
But as this question is not fairly raised in the record, we waive any opinion upon it.
Various other questions are presented in argument, and insisted on with much ingenuity, which, in the view we have taken of this case, it is unnecessary to discuss.
The judgment of the Circuit Court must be reversed, and a new trial awarded.